IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HARRESCIA HOPKINS,<br>        Movant, | MOTION TO VACATE<br>28 U.S.C. § 2255 |
| v. | CRIMINAL ACTION NO.<br>1:22-cr-284-SEG-CMS |
| UNITED STATES OF AMERICA,<br>        Respondent. | CIVIL ACTION NO.<br>1:23-cv-3612-SEG-CMS |

## **<u>FINAL REPORT AND RECOMMENDATION</u>**

Movant Harrescia Hopkins has filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate"). [Docs. 44, 46]. In the Motion[1] to Vacate, Hopkins argues that (1) her attorney failed to present certain mitigating evidence at sentencing, (2) she was unable to appeal because her attorney "ignored [her] for two weeks after sentencing," and (3) she was coerced into pleading guilty. [Doc. 46 at 4–5]. The Government filed a response. [Doc. 60]. Hopkins did not file a reply.

---

[1] Hopkins has filed an Amended Motion to Vacate [Doc. 46], which supersedes the original Motion [Doc. 44] and is now the operative pleading. *See Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1229 (11th Cir. 2018) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against [her] adversary.") (internal quotation marks and alterations omitted). For ease of reference, I will refer to the Amended Motion simply as the Motion.

For the reasons stated below, I recommend that the Motion to Vacate [Doc. 46] be **DENIED**.

## I.    BACKGROUND

In 2021, while Hopkins was employed by the Federal Bureau of Prisons ("BOP") as a corrections officer at the United States Penitentiary–Atlanta, Hopkins was investigated based on allegations that she was accepting bribes to smuggle contraband into the facility.  [Doc. 60 at 2].  In the course of the investigation the Government discovered that in 2020 and 2021, Hopkins applied for and received two Paycheck Protection Program ("PPP") loans, each totaling $19,100.  [*Id.*; Doc. 19-1 at 5–7].  Hopkins indicated that the loans would be used for payroll or other business expenses for Hopkins Towing and Storage, a business that did not exist.  [*Id.*].  Hopkins spent the money from the loans on personal expenses including a Caribbean cruise and other travel, the purchase of a new Chevrolet Blazer, landscaping for her house, restaurant meals, and retail goods.  [*Id.* at 7].  Hopkins also transferred some of the money from the loans to her relatives.  [*Id.*].

On August 9, 2022, Hopkins was charged with two counts of wire fraud in violation of 18 U.S.C. § 1343.  [Doc. 1].  On December 20, 2022, Hopkins entered a negotiated plea of guilty to both counts.  [Docs. 19, 19-1].  During the plea colloquy, Hopkins attested that no one had asked her to lie during the plea hearing,

and confirmed that her guilty plea was made voluntarily and of her own free will. [Doc. 25 at 7, 31]. In an April 10, 2023 proceeding before the United States Merit Systems Protection Board in which she contested her termination from the BOP, Hopkins alleged that her guilty plea had been coerced by the United States Attorney who was prosecuting the case. [Doc. 31 at 5–6]. When that allegation came to light, this Court held a status conference on May 25, 2023, and did an additional colloquy on the record; Hopkins again confirmed that her guilty plea had not been coerced and was freely and voluntarily made, and attested that she did not wish to withdraw her guilty plea. [*Id.* at 8–10].

On June 8, 2023, Hopkins was sentenced to five months of imprisonment and two years of supervised release. [Docs. 34, 35]. The Court granted a two-level downward adjustment for acceptance of responsibility. [Doc. 34; Doc. 66-1 at 24–28]. Hopkins filed a Motion to Vacate on August 14, 2023, and an Amended Motion on August 31, 2023. [Docs. 44, 46].

## II.    LEGAL STANDARD

A motion to vacate, set aside, or correct sentence may be made "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "[C]ollateral review is not a substitute for a direct appeal . . . ." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam). Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (per curiam)) (internal quotation marks omitted). A § 2255 movant "has the burden of sustaining [her] contentions by a preponderance of the evidence." *Tarver v. United States*, 344 F. App'x 581, 582 (11th Cir. 2009) (per curiam) (quoting *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)).

In her Motion, Hopkins appears to raise three claims for relief: that her attorney was ineffective for failing to raise various mitigation arguments at sentencing, that her attorney prevented her from appealing her sentence, and that her guilty plea was coerced. [Doc. 46 at 4–5].

## III.  DISCUSSION

### A.    *Ineffective Assistance of Counsel*

Hopkins first argues that her attorney was ineffective. I will first set forth the legal standard for ineffective assistance of counsel claims and will then discuss the claims in turn.

4

To demonstrate ineffective assistance of counsel, a convicted defendant must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Wash.*, 466 U.S. 668, 687 (1984). As to the first prong of *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). That presumption is "even stronger" if a court is "examining the performance of an experienced trial counsel." *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000).

As to the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court may consider either prong first and need not address the other "if the defendant makes an insufficient showing on one." *Id.* at 697.

The defendant, not the Government, "continually bears the burden of persuasion on the constitutional issue of competence and further, (adding the prejudice element) on the issue of ineffective assistance of counsel." *Chandler*,

218 F.3d at 1315 n.15. "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the [defendant]." *Id.*

    *1. Mitigation Arguments*

Hopkins argues that her attorney "failed to represent [her]" by failing to make certain mitigation arguments at sentencing. [Doc. 46 at 4]. Hopkins claims that:

> When the government mentioned problems at [her] job, [her attorney] didn't defend the fact that the loans were forgiven. [Hopkins] did not complete the application herself. [She] was manipulated. [She has] been convicted based on actions of someone else. The government lied or assume[d] she bought cars and went on vacation with the money, no one ([her] attorney) didn't correct them. When [Hopkins] decided to sue the BOP is when [she] was indicted. [She] endured sexual, verbal harassment. Left in a hostile work environment.

[*Id.*].

Each of these arguments is without merit. First, counsel was not ineffective for failing to "defend the fact that the loans were forgiven[.]" [*Id.*]. As the Government points out, "the fact that the loans were forgiven by the [Small Business Administration] was inconsequential to [Hopkins's] sentencing; loan forgiveness was not a way of discharging criminal liability for loans that had been obtained through fraud." [Doc. 60 at 12]. Additionally, to obtain forgiveness of the loans Hopkins would have been required to submit documentation verifying information including the number of full-time employees on payroll, pay rates, and other

business expenditures. 15 U.S.C. § 636m(e)–(f). When submitting the applications for the loans and for loan forgiveness, Hopkins "knew that Hopkins Towing and Storage was not a real or functioning business, and knew that the information on the applications . . . was not true." [Doc. 25 at 22–24]. Accordingly, counsel did not perform deficiently by failing to raise that the loans were forgiven.

Next, counsel was not ineffective for failing to argue that Hopkins "did not complete the application [her]self, [she] was manipulated," and she was "convicted based on the actions of someone else[.]" [Doc. 46 at 4]. In the written factual basis of the plea agreement that Hopkins signed, she agreed that she herself electronically signed and submitted the PPP loan applications and submitted false IRS forms to support the applications. [Doc. 19-1 at 5–6]. Hopkins also agreed at the sentencing hearing that she signed and submitted the applications and submitted false IRS forms. [Doc. 25 at 21–24].

In addition to her agreement that she was the one to submit the loan applications, at sentencing the Court granted Hopkins a two-point deduction in the sentencing calculation for acceptance of responsibility. [Doc. 66-1 at 24, 27] ("There is no allegation here that Ms. Hopkins told the Merits Board or anyone else that she didn't take out fraudulent loans or that she otherwise did not actually commit the crime of which she was charged."). However, if her attorney had argued that

Hopkins did not complete the application herself and was "convicted based on the actions of someone else," she may not have received the two-point deduction for acceptance of responsibility. *See, e.g.*, *Timmons v. United States*, No. CR 12-00240-WS-N-5, 2016 WL 1457237, at *12 (S.D. Ala. Mar. 18, 2016), *report and recommendation adopted,* 2016 WL 1448833 (S.D. Ala. Apr. 12, 2016) ("The attempts Deen and Timmons did make at sentencing to downplay Timmons's involvement in the RICO conspiracy were rejected by the Court, and the Court expressly noted that those attempts nearly did cause Timmons to lose his acceptance of responsibility adjustment."). Accordingly, counsel did not perform deficiently by not attempting to deflect Hopkins's responsibility for her crimes.

Third, Hopkins argues that "[t]he government lied or assume[d she] bought cars and went on vacation with the money, no one ([her] attorney) didn't correct them." [Doc. 46 at 4]. In the written factual basis of the plea agreement, signed by Hopkins, she agreed that she "spent the PPP money on personal expenses including a Caribbean cruise and other travel, a down payment and other expenses related to purchasing a new Chevrolet Blazer, landscaping for her house, restaurant meals, and retail goods." [Doc. 19-1 at 7]. Hopkins's claim here is also belied by charges in her personal checking account and what she told agents in an interview. [Doc. 60 at 13]. Hopkins does not offer an alternative explanation for what the loan funds were

used for, and the funds clearly were not used for their intended purpose as Hopkins Towing and Storage was not a real or functioning business. Accordingly, counsel did not perform deficiently by failing to object to the claim that Hopkins used the funds for the above-mentioned purposes.

And finally, Hopkins claims that she "endured sexual, verbal harassment" and was "[l]eft in a hostile work environment." [Doc. 46 at 4]. Hopkins's argument here is not entirely clear, but she appears to be alleging that her attorney was ineffective for failing to argue that the hostile work environment she suffered at the BOP should have been considered as a mitigating factor. Hopkins fails to explain how experiencing an alleged hostile work environment could be a mitigating factor for her commission of loan fraud outside of work. Additionally, during her sentencing, the Court stated that it had "read the summary documented records to an alleged hostile work environment," but did not "have the kind of information that [it] would need to be comfortable in relying on that for purposes of assessing acceptance of responsibility here." [Doc. 66-1 at 28]. Accordingly, counsel did not perform deficiently by failing to argue at sentencing that Hopkins had experienced a hostile work environment at the BOP.

"[C]ounsel is not ineffective in failing to make a meritless objection or raise a meritless argument." *Broderick v. United States*, No. 8:14-CR-358-T-27SPF, 2020

WL 1511854, at *7 (M.D. Fla. Mar. 30, 2020) (citing *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008)).  Hopkins's counsel did not perform deficiently by failing to raise meritless mitigation arguments at sentencing.  Hopkins therefore cannot establish an ineffective assistance of counsel claim based on these arguments.

### 2.  Failure to Appeal

In explaining why she did not raise the above arguments on appeal, Hopkins appears to claim that her attorney prevented her from filing an appeal by "ignor[ing her] for two weeks after sentencing[.]"  [Doc. 46 at 4].  Out of an abundance of caution, I will liberally construe this as its own claim for relief; nevertheless, this claim also fails.

"[W]hether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking . . . whether counsel in fact consulted with the defendant about an appeal."  *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).  If counsel did consult with the defendant about an appeal, "the question of deficient performance is easily answered" and counsel's performance was only deficient if counsel "fail[ed] to follow the defendant's express instructions with respect to an appeal."  *Id.*  Later in her motion, Hopkins alleges that her attorney told her that filing an appeal "was pointless[.]"  [*Id.* at 6].  This statement shows that Hopkins's attorney did consult with her regarding an appeal, and Hopkins does not allege that

she instructed counsel to file an appeal and counsel did not do so. Hopkins therefore cannot establish an ineffective assistance of counsel claim based on this argument.

### B. Voluntariness of Guilty Plea

Hopkins claims that she was told she had no choice but to plead guilty because if she did not, the government would add charges "concerning false allegations made about [her]" regarding the allegations of bribery at her workplace. [Doc. 46 at 5]. To the extent that Hopkins is claiming that her guilty plea was coerced, this argument is without merit.

There is a "strong presumption" that statements made during the plea colloquy are true, and those sworn statements "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (stating that statements made during plea colloquy "are afforded great weight"). And where, as here, a movant's claim of ineffective assistance of counsel is in direct conflict with her statements under oath, the movant has a strong burden to show that those sworn statements are false. *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007).

During the plea colloquy, Hopkins attested that no one had asked her to lie during the plea hearing and confirmed that her guilty plea was made voluntarily and of her own free will. [Doc. 25 at 7, 31]. In addition to her statements made during

the original plea colloquy, the Court held a status conference for the purpose of determining whether Hopkins's plea was voluntary. *See* [Doc. 31]. The Court questioned Hopkins at length about the voluntariness of her plea, and Hopkins again confirmed that her plea was made freely and voluntarily, and that she did not wish to withdraw her guilty plea. [*Id.* at 8–10].

Hopkins's after-the-fact statement to the contrary is not sufficient to overcome the presumption of the truth of these sworn statements. Hopkins therefore cannot establish that her guilty plea was the product of coercion, and this claim for relief fails.

C.    *Evidentiary Hearing*

A court is not required to hold an evidentiary hearing every time a § 2255 claim is raised. *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989). Instead, a federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner alleges facts that, if proven, would entitle the petitioner to relief. *Id.* A court also is not required to hold an evidentiary hearing when "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the record conclusively shows that Hopkins is entitled to no relief; a hearing, therefore, is not required. *See* 28 U.S.C. § 2255(b).

12

## IV.  CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.§ 2253(c)(2)."  28 U.S.C. foll. § 2255, Rule 11(a).  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a [motion to vacate] on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (citing *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

13

I **RECOMMEND** that a certificate of appealability be denied because the resolution of the issues presented is not debatable.  If the district judge adopts this recommendation and denies a certificate of appealability, Hopkins is advised that she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  28 U.S.C. foll. § 2255, Rule 11(a).

V.    CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Amended Motion to Vacate [Doc. 46] be **DENIED**, the original Motion to Vacate [Doc. 44] be **DENIED AS MOOT**, that a certificate of appealability be **DENIED**, and that civil action number 1:23-cv-3612-SEG-CMS be **CLOSED**.

**SO RECOMMENDED**, this 5th day of May, 2025.

Catherine M. Salinas
United States Magistrate Judge